**William GLOBIG, Jr., Plaintiff,**

v.

**GREENE & GUST CO., a foreign corporation, Defendant,**

and

**Burton Plumbing-Heating Co., Inc., a foreign corporation, Defendant and Third-Party Plaintiff,**

and

**ARMSTRONG CORK COMPANY, a foreign corporation, and United States of America, Third-Party Defendants.**

No. 59-C-153.

United States District Court
E. D. Wisconsin.

Feb. 2, 1962.

See also 193 F.Supp. 544.

---

Albert J. Goldberg, Milwaukee, Wis., for plaintiff.

Suel O. Arnold, Milwaukee, Wis., for defendant.

Jack R. Wiedabach, Milwaukee, Wis., for defendant and third-party plaintiff.

George D. Young, Milwaukee, Wis., for third-party defendant, Armstrong Cork Co.

James B. Brennan, U. S. Atty., by William J. Mulligan, Asst. U. S. Atty., Milwaukee, Wis., for third-party defendant, United States of America.

GRUBB, District Judge.

This is an action for recovery of damages for injuries sustained by plaintiff, William Globig, Jr., in a fall in building No. 3 at Badger Village Housing Project, Badger Ordnance Plant, near Baraboo, Wisconsin, on August 28, 1953, allegedly resulting from the negligence of defendants Greene & Gust Co. and Burton Plumbing-Heating Co., Inc., in violating the safe place statute, Section 101.06 Wis.Stats. Jurisdiction over the principal action is based on diversity of citizenship, Section 1332, Title 28 U.S.C.A. The amount in controversy exceeds $10,000 exclusive of interest and costs. Jurisdiction over the third-party claim against the United States rests on the Tort Claims Act, Section 1346(b), Title 28 U.S.C.A.

Plaintiff is a citizen of Wisconsin. Defendant Greene & Gust Co. (hereinafter

referred to as "Greene & Gust") is an Illinois corporation. Defendant Burton Plumbing-Heating Co., Inc. (hereinafter referred to as "Burton"), is an Indiana corporation.

Greene & Gust has cross-claimed against Burton for contribution or, in the alternative, for indemnification. Burton has cross-claimed against Greene & Gust for contribution and has filed a third-party complaint against Armstrong Cork Company (hereinafter referred to as "Armstrong"), a Pennsylvania corporation, for indemnification and against the United States of America for contribution. The third-party defendant United States has cross-claimed against Greene & Gust for indemnification.

The case was tried to the court. Plaintiff contends that Greene & Gust and Burton were negligent in violating the provisions of the safe place statute which lays down the standard of care applicable under the circumstances of this case.

The safe place statute, Section 101.06 Wis.Stats., in the year in question, 1953, insofar as applicable, provided as follows:

"101.06 *Employer's duty to furnish safe employment and place.* Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof * * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment * * * shall * * * maintain such place of employment * * as to render the same safe."

Definitions of pertinent terms used in the statute are stated in Section 101.01 Wis.Stats. and are as follows:

"(3) The term 'employer' shall mean and include every person, firm, corporation, state, * * * having control or custody of any employment, place of employment or of any employe."

"(5) The term 'frequenter' shall mean and include every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

"(13) The term 'owner' shall mean and include every person, firm, corporation, state, * * * having ownership, control or custody of any place of employment * * * or of the construction, repair or maintenance of any place of employment * * *."

The following facts have been stipulated by the parties or were established by the evidence on the trial. The accident in question occurred in a housing unit, building No. 3. At the time of the accident, a remodeling project was in progress on said premises which were owned by the United States. Greene & Gust was the prime contractor, Burton was a plumbing subcontractor under Greene & Gust, and Armstrong was a subcontractor for insulation under Burton.

Plaintiff was an insulator or pipe coverer assigned to work on said project by his employer Armstrong. Shortly before 11:00 a. m. on August 28, 1953, plaintiff went to the attic of building No. 3 to fetch a bucket of paste which was required at another location. Access to the attic was provided through a scuttle hole, three or four feet square, which was reached by a ladder from the floor below. The attic flooring consisted of 2 x 6 or 2 x 8 inch joists on either 16 or 24 inch centers, running the width of the building, as well as stiffeners between the joists. Plasterboard, which formed the ceiling of the rooms below, was affixed to the lower surfaces of the joists. The access opening was located to one side of the longitudinal center of the attic. The principal supply and return plumbing pipes from which extended lateral branch pipes were located along the longitudinal center of the building under the apex of the inverted V-roof. A catwalk consisting of two 2 x 8 inch boards ran at right angles to the joists underneath the principal supply and return pipes.

The bucket of paste was located between the joists and connecting stiffeners, approximately 10 or 15 feet from the scuttle hole and on the other side of the longitudinal center of the attic. He approached the bucket by walking on the 2 inch edge of the joists and on the stiffeners. As he stooped over to reach for the bucket, he slipped and then fell between the joists, through the plasterboard ceiling of the room below. He landed on his feet and then fell on his right arm. Plaintiff sustained dislocation and fracture of the bones of his right arm. His injuries required hospitalization, surgery, and physical therapy. They resulted in a permanent partial disability.

There is conflicting testimony as to several aspects of this accident. The court finds that plaintiff's foreman, Chester Schulz, followed him up the ladder as plaintiff was ascending to fetch the bucket. Schulz used his flashlight to locate the bucket in the attic and then lent the flashlight to plaintiff for use in getting the bucket. The temporary lighting in the attic had been removed along with most of the equipment which had been used in the attic for insulating. There was one permanent light in the attic which could have been turned on by a switch down below. The court finds that this light was not on at the time of plaintiff's injury.

At the time the United States turned over building No. 3 to Greene & Gust for commencement of the construction project, the floor of the attic of said building consisted of joists and a two-plank catwalk, as described above, without the presence of other temporary or permanent flooring. Burton did not check on safety precautions or lack of them or inspect the work performed by its subcontractor Armstrong. At the time of the accident, the building wherein the accident occurred was not in the exclusive control or custody of any particular trade. All trades, such as sheet metal workers, carpenters, plumbers, and electricians, had free access while any other trade was working there. The United States had one project engineer on the premises who inspected the performance of the work to see whether said performance was in compliance with the requirements of the contract and specifications. There is no evidence that the United States checked on the manner of doing the work with reference to safety precautions.

In light of the evidence adduced on the trial, the court finds that defendants Greene & Gust and Burton and the third-party defendants Armstrong and United States were negligently violating the safe place statute and that their negligence was an efficient cause in bringing about plaintiff's injuries. Additionally, the court finds that plaintiff was contributorily negligent and that 15 per cent of the total causal negligence should be attributed to him. Further, the court finds that the causal negligence attributable to each party, other than the plaintiff, exceeded that of plaintiff's. Since the negligence of each defendant and third-party defendant has been found to exceed the negligence attributable to the plaintiff, it is not necessary to allocate the percentage of negligence attributable to Greene & Gust, Burton, Armstrong, and the United States individually for purposes of the comparative negligence statute, Section 331.045 Wis.Stats., or for a determination of contribution rights.

At the time of the injury there was no temporary or permanent flooring which would provide a reasonably safe walking surface in the areas where plaintiff had to go to get the paste bucket. A catwalk along the longitudinal center of the attic and odd pieces of plywood of varying dimensions placed at undisclosed locations on the attic floor do not suffice to render the attic as safe as its nature permitted. Compare Industrial Commission Order No. 35.27 which calls for temporary plank flooring over joist construction.

It has not been disputed that the site where plaintiff sustained his injuries was a place of employment and that plaintiff was a frequenter thereof. Greene & Gust, Burton, and Armstrong had a nondelegable affirmative duty under the safe place statute as employers to furnish a

place of employment as safe for frequenters as the nature thereof reasonably permitted. Section 101.06 Wis.Stats.; Mickelson v. Cities Service Oil Co., 250 Wis. 1, 26 N.W.2d 264 (1947).

Greene & Gust as prime contractor was also charged with the observance of all safety provisions of applicable law under its contract with the government. Burton, by its contract with Greene & Gust, bound itself to observe the provisions, conditions, and specifications of the prime contractor's agreement with the government.

■ Armstrong, as the immediate employer of the plaintiff, is additionally charged with the responsibility for provision and maintenance of safeguards. See Industrial Commission Order No. 35.01. In failing to provide adequate flooring and proper lighting in the attic of building No. 3, defendants Greene & Gust and Burton and third-party defendant Armstrong failed to furnish a reasonably safe place of employment. Thereby said parties negligently violated the standard of care imposed upon them by the safe place statute.

Although it was shown that Greene & Gust and Burton were not performing work in the attic of building No. 3 at the time of the accident, it has not been established that they relinquished control and custody thereover. To the contrary, there was testimony that all trades—sheet metal, carpenters, plumbers, and electricians—had free access at all times to the premises in question. They were employers and were not excused from their affirmative statutory duties of furnishing a safe place of employment. Cf. Potter v. City of Kenosha, 268 Wis. 361, 68 N.W. 2d 4 (1955), which is not applicable under the circumstances here shown.

■ The negligence of the third-party defendant United States lies in a violation of the standard of care imposed by the safe place statute on the owner of a place of employment in failing to maintain a safe place of employment. The evidence indicates that the attic of building No. 3 was not reasonably safe as a place of employment at the time the premises were turned over to the control and custody of the prime contractor. Having had knowledge of the unsafe condition and having had the power and duty to remedy it or require its correction, the United States is liable by its failure to provide a safe place of employment. Criswell v. Seaman Body Corporation, 233 Wis. 606, 618, 619, 290 N.W. 177 (1940). The Potter case may be distinguished because there the owner turned over to the contractor a place which was rendered unsafe as a place of employment by the act of the contractor, whereas in the instant case the attic of building No. 3 was unsafe for employees and frequenters before the United States relinquished control and custody thereof to Greene & Gust.

■ The court finds plaintiff guilty of contributory negligence notwithstanding the rule that an employee working in a place of danger has a lesser degree of care for his own safety than that required of a person who is not compelled to give attention to his work. Dinan v. Chicago & Milwaukee Electric Railway Company, 164 Wis. 295, 159 N.W. 944 (1916); Hodgson v. Wisconsin Gas & Electric Company, 188 Wis. 341, 206 N.W. 191 (1925); Umnus v. Wisconsin Public Service Corporation, 260 Wis. 433, 440, 51 N.W.2d 42 (1952).

■ In finding plaintiff guilty of contributory negligence, the court has considered the plaintiff's testimony that he had previously worked in the attic area and the conflicting and inconsistent testimony as to the availability of lighting on said premises. Knowing of the unsafe condition of the flooring in said attic, plaintiff was negligent in not inquiring about and obtaining a proper light either by actuating the switch to turn on the permanent and temporary lighting had it been available or by obtaining a drop cord to light his way. Plaintiff was not free from causal contributory negligence merely because he carried the flashlight. The simultaneous carrying of the flashlight and the bucket over unsure footing in the attic area shows plaintiff's disregard for his own safety. Plaintiff could:

have inquired about the switch for the permanent lighting and could have carried some plywood to make temporary flooring between the platform of the scuttle hole and the paste bucket.

Based on the foregoing findings, it is the conclusion of the court that plaintiff is entitled to recover his damages from defendants Greene & Gust and Burton, with said recovery reduced by the percentage of negligence attributable to plaintiff, or 15 per cent.

■ It is the further conclusion of the court that defendants Greene & Gust and Burton and the third-party defendant United States are joint tort-feasors whose concurring acts of negligence brought about plaintiff's injuries, and that said parties are commonly liable to plaintiff. For the foregoing reasons, defendant Greene & Gust is entitled to contribution from Burton, and defendant Burton is entitled to contribution from Greene & Gust and the United States, as requested by said respective parties, in the event and to the extent that said respective parties satisfy more than their share of the common liability.

■ Although third-party defendant Armstrong also has been found negligent in this action, it may not be held liable to plaintiff because Armstrong's liability under the compensation act as plaintiff's employer is in lieu of any tort liability on its part. Therefore, Armstrong does not share common liability with the other tort-feasors in the case and is not liable for contribution. Criswell v. Seaman Body Corporation, supra, 233 Wis. at 619, 290 N.W. 177; Buggs v. Wolff, 201 Wis. 533, 230 N.W. 621 (1930).

In respect to the various claims for indemnification, the conclusions of the court are as follows:

The cross-claim of Greene & Gust against Burton and the third-party claim by Burton against Armstrong for indemnification must be denied. The cross-claim by the United States against Greene & Gust must be granted.

■ The agreements between Greene & Gust and Burton and between Burton and Armstrong, respectively, contain no specific provisions for indemnification. The provision—relied on by Burton—requiring Armstrong to perform its obligations in a workmanlike manner does not carry an implied understanding that Armstrong save Burton harmless against tort claims occasioned by Armstrong's negligence under the circumstances of this case.

The case of Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), is not controlling where the negligence of the alleged indemnities consists of a violation of a continuing, affirmative duty to furnish a safe place of employment to employees and frequenters. This duty rested on the alleged indemnities Greene & Gust and Burton individually because the place of employment was in their control and custody. Neither Greene & Gust nor Burton made any inspections or any effort to see that the safe place statute was complied with. Both were employers as therein defined and had the affirmative duty to see that the safe place statute was complied with. Notwithstanding the rationale of the decision in the Ryan case where it was held that the right to indemnification arose from a contractual obligation which remained unaffected by the relative tortious conduct of the parties, the rule of the Ryan case is not applicable here.

■ Pursuant to their agreement, Burton and Armstrong may have owed Greene & Gust and Burton, respectively, the duty to perform their work safely. As to the circumstances causing this accident, they were all employers whose negligence, under the safe place statute, concurred in bringing about plaintiff's injuries. The alleged indemnities breached more than a duty to inspect; they failed jointly with the indemnitors to provide a safe place of employment. Under these circumstances they are entitled to contribution from one another, but Greene & Gust and Burton cannot demand indemnification from their respective subcontractors as to losses in part directly re-

sulting from their own negligence as employers in control of the premises.

The case of Hartford Accident & Indemnity Company v. Worden-Allen Company, 238 Wis. 124, 297 N.W. 436 (1941), appears to be the only decision construing indemnification rights between parties liable under the Wisconsin safe place statute. The court there approved the distinction between active and passive negligence—disregarded in the Ryan case—as relevant in the determination of the contractual right to indemnification. The passive negligence of the owner of a place of employment was held not to constitute a defense against an express written indemnification agreement. Additionally the court observed that where the fault was wholly that of the indemnitor, or where the right to indemnification is based on some theory of agency, there would be no need for a contract of indemnity. In the instant case, as between Greene & Gust and Burton and Armstrong, the fault did not lie wholly with the claimed indemnitors. Further, in their relation to plaintiff as defined by the safe place statute which sets forth the standard of care to be observed by them, they occupied the positions of fellow contractors whose concurring negligence occasioned the injuries, notwithstanding any principal and agency relationship that may have existed between any of the parties. Bearing on the right to indemnification is an observation by the court in the recent case of Jacobs v. General Accident Fire & Life Assurance Corporation, Ltd., 14 Wis.2d 1, 109 N.W.2d 462 (1961), where the court cites the type situations where indemnity is ordinarily granted as listed by Dean Prosser in his Law of Torts (2d ed.), p. 250, sec. 46. The instance there listed which is most relevant to the instant case, and which has been relied on by Burton to support its claim against Armstrong, is as follows at page 9 of 14 Wis.2d, at page 467 of 109 N.W.2d:

"(3) Where the indemnitee has incurred liability to a third person *by reason of negligent reliance* upon the care which should have been exercised by * * * a contractor making improvements and repairs." (Emphasis added.)

This situation is not comparable to the circumstances of the claims by Greene & Gust and Burton. The fault of these parties did not consist of negligent reliance upon the care which should have been exercised by their respective subcontractors. They breached their own affirmative duties to render reasonably safe the place of employment over which they exercised control and custody. Under these circumstances, the claims for indemnity by Greene & Gust and Burton must be denied.

 The claim of the United States against Greene & Gust stands on a different footing. The United States is entitled to indemnification on two grounds: First, an express, written contractual obligation of Greene & Gust; and second, an agreement that is to be implied under the circumstances of this case, in accord with the Ryan case.

The contract indemnification provision is found in paragraph No. 7 of the General Conditions of the agreement between the government and Greene & Gust and requires the contractor to save the government harmless from any claim against the government on account of any damage alleged to have been sustained by any other contractor or subcontractor through the act or neglect on the part of the contractor Greene & Gust. As between the government and Greene & Gust, the contractor is further charged with responsibility for all damages to persons that occur through his fault or negligence in connection with the prosecution of the work under paragraph No. 23 of the General Conditions, and with the responsibility for all buildings from the time of their release to him by the government until their final acceptance under Sec. 5, Division DBS 1, of the Technical Specifications. The validity of the express indemnification provision has not been questioned. See Hartford Accident &

Indemnity Company v. Worden-Allen Company, 238 Wis. 124, 297 N.W. 436 (1941).

Additionally, Greene & Gust's liability for indemnification may be based on the decision of the Ryan case. Under the circumstances shown here, the situation of the United States is similar to that of the shipowner in Ryan who breached the non-delegable duty to supervise the stowage of the cargo. The negligence of the United States in this action lies in its failure to turn over a safe place of employment, over which it relinquished control and custody except for purposes of inspection, and its failure to detect that the said unsafe condition had not been corrected by the contractor. These circumstances bring the claim of the United States within the situation described in the case of Jacobs v. General Accident Fire & Life Assurance Corporation, Ltd., 14 Wis.2d 1, 109 N.W.2d 462 (1961), wherein indemnity is ordinarily granted.

The negligence of the United States would render it liable to plaintiff and, therefore, for contribution to joint tort-feasors. It does not serve, under these circumstances, as a defense against a contractual claim, express or implied in fact, for indemnification.

The court finds that plaintiff's damages are as follows:

The wage loss, based on plaintiff's wage at the time of injury of $116.80 per week and a period of total disability of sixty-four weeks, is in the amount of $7,475.20.

Special damages by way of medical, hospital, and other care and expense total $2,846.80.

The court finds that plaintiff is entitled to the sum of $22,500 for pain, suffering, and disability other than wage loss. This computation takes into consideration that plaintiff has had three prolonged periods of hospitalization and various surgical and orthopedic procedures involving severe pain and discomfort, as to which plaintiff testified with restraint but which may be further corroborated by reference to narcotic medications pre-scribed for him. Plaintiff was in a cast extending from axilla to finger tips for extended periods of time and has had prolonged physiotherapy treatments.

At the time of his injury, plaintiff was twenty-six years old. He was a skilled workman, experienced in his trade. As a result of his injuries, plaintiff has sustained a permanent partial disability. He is unable to fully extend his right arm and has very limited rotation of the right forearm and of flexion of the right wrist. Medically, his disability has been estimated as equal to 35 per cent as compared to loss of the extremity at the elbow joint level. Plaintiff testified that he is presently employed but experiences difficulty and discomfort in weight lifting and in working in tight places incidental to his work.

Plaintiff's total damages of $32,822 must be reduced by the amount of negligence attributable to him, or 15 per cent, in an amount of $4,923.30, resulting in an award of $27,898.70.

The foregoing decision embodies the court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A. The following is a brief summary of said findings and conclusions:

## FINDINGS OF FACT

1. The court has jurisdiction as set forth above.

2. Plaintiff was a frequenter on the premises.

3. Defendants Greene & Gust and Burton and third-party defendant Armstrong were negligent in breaching their respective duties as employers to furnish a reasonably safe place of employment.

4. Third-party defendant United States negligently breached its duties as owner of a place of employment by failing to turn over a reasonably safe place of employment.

5. The negligence of defendants Greene & Gust and Burton and of third-party defendants Armstrong and United States was an efficient cause of bringing about plaintiff's injuries.

6. Plaintiff was contributorily negligent, and his negligence was an efficient cause of his injuries.

7. The causal negligence attributable to plaintiff is in the amount of 15 per cent.

8. The causal negligence attributable to each defendant and third-party defendant individually exceeded that of plaintiff's.

## CONCLUSIONS OF LAW

1. Plaintiff is entitled to judgment in the amount of $27,898.70 against defendants Greene & Gust and Burton together with his costs and disbursements herein.

2. Defendants Greene & Gust and Burton and third-party defendant United States are entitled to contribution according to law as against each other.

3. Defendants Greene & Gust and Burton are not entitled to indemnification as claimed against Burton and Armstrong respectively.

4. Third-party defendant United States is entitled to indemnification against Greene & Gust.

The court hereby directs the clerk to enter judgment as follows:

1. In favor of the plaintiff and against the defendants Greene & Gust and Burton and each of them in the sum of $27,-898.70 damages, together with his costs and disbursements herein.

2. In favor of the defendants Greene & Gust and Burton and the third-party defendant United States against each other for contribution toward any amount any of them may pay in excess of one-third of the judgment.

3. In favor of the third-party defendant Armstrong and against the defendant Burton, dismissing Burton's third-party complaint as against Armstrong, and for its costs and disbursements herein.

4. In favor of the defendant Burton and against the defendant Greene & Gust, dismissing Greene & Gust's cross-complaint against Burton for indemnification.

5. In favor of the third-party defendant United States and against the defendant Greene & Gust for indemnification against any amount that the third-party defendant United States may be compelled to pay by way of contribution to any defendant or third-party defendant herein.