HARTFORD ACCIDENT & INDEMNITY COMPANY, Respondent, vs. WORDEN-ALLEN COMPANY, Appellant.

*March 13—June 12, 1941.*

For the appellant there were briefs by *Lecher, Michael, Whyte & Spohn,* attorneys, and *Thomas S. Stone* of counsel, all of Milwaukee, and oral argument by *Malcolm K. Whyte.*

For the respondent there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Paige Cofrin* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb* and *Mr. Cofrin.*

The following opinion was filed April 15, 1941:

WICKHEM, J.    Permanent Construction Company, hereinafter called "Permanent," is a corporation engaged in the general contracting and construction business.    Worden-Allen Company, hereinafter called "Worden," is a corpora-

tion engaged in the fabrication and erection of structural steel. These corporations have substantially the same stockholders, have several executive officers and directors in common, and are controlled by the same persons. The Seaman Body Corporation, hereinafter called "Seaman," owns a manufacturing plant in Milwaukee. In August, 1936, Permanent secured a contract to erect a building for Seaman upon the premises of the latter. By written contract Permanent sublet the structural steel work to Worden by a contract containing the following undertaking by Worden:

"In accepting this order you agree to indemnify, reimburse and save harmless the owner and us of and from all loss and damage to person or property and all claims, suits or demands arising from damages or injuries to you and your employees, ourselves and our employees, the owner and his employees, other contractors and their employees, and the general public, due to, arising from, or connected with your operations on this job."

Work was commenced under these contracts and on September 28, 1936, Charles Criswell, an employee of Worden, touched an iron column which was being erected by the latter and received an electric shock and injuries when a metal cable extending from the boom of a derrick used in erecting the column either came in contact with the uninsulated wire of a power line maintained by Seaman on the premises, or came so close as to cause an arc to form between the wires and the cable. Criswell sought and received workmen's compensation from Worden, the award being increased fifteen per cent for violation of an industrial commission order with respect to the manner of operation of the boom by Worden. By virtue of the permission contained in sec. 102.29 (1) (b), Stats., Criswell commenced suit in circuit court against Seaman and the Milwaukee Electric Railway & Light Company for his damages. The action against Seaman was for violation of the safe-place statute. The particulars concerning

this action are well set forth in the report of the case in this court. *Criswell v. Seaman Body Corp.* 233 Wis. 606, 290 N. W. 177. It is enough to state that in the trial court the action was dismissed as against the Milwaukee Electric Railway & Light Company and a judgment in favor of plaintiff against Seaman was entered. This judgment was affirmed upon appeal to this court. Sometime after the institution of this action Seaman served Permanent and Worden with a tender of defense, and demanded that they defend Seaman and save it harmless from any loss or damage directly or indirectly arising out of matters alleged in Criswell's complaint. Worden served a declination upon Seaman stating that since it was entitled to a portion of Criswell's recovery in repayment of the compensation paid by it, defense of the action would involve it in an inconsistent position. The action was tried and judgment entered against Seaman for $4,975.35 and costs. Plaintiff paid this judgment, and the balance of its present claim is for the expenses incurred in defending the action.

The principal point involved upon this appeal is quite narrow. Plaintiff was the insurer of Seaman against liabilities arising out of the use and maintenance of its premises. Having discharged the liability of Seaman to Criswell arising out of violation of the safe-place statute, it is subrogated by the express terms of its policy to the rights of Seaman against defendant. These rights, if they exist, are based upon the contract between Permanent and Worden by which Worden agreed to save harmless not only Permanent but the owner of the premises from damages "due to, arising from, or connected with your operations on this job." By the violation of a safety order governing the manner in which its boom was operated in relation to the power wires, Worden was guilty of misconduct having a causal relation to Criswell's injuries, but it sustained no tort liability to Criswell who, as its employee, was entitled only to compensation under the Workmen's Com-

pensation Act. By reason of its failure to move the wires, Seaman sustained a liability to Criswell under the safe-place statute. It is now claimed that plaintiff, which stands in the shoes of Seaman, is not entitled to be indemnified under this contract for any injuries to which Seaman's actual default proximately contributed. We do not consider the contention to be sound. If the indemnity is to mean anything, it must include situations in which Seaman has sustained a liability by reason of the building operations. It may very well be that if the injuries had arisen solely out of Seaman's default in some respect, and were not in any way attributable to Worden, there would be no liability under the indemnity agreement. Here, however, the active negligence was that of Worden. Liability of Seaman was predicated upon a failure to furnish a safe place of employment, and there was a default in this respect only because of Worden's operations on the premises. In point of fact, the premises were only unsafe as to Worden's employees. Upon the former appeal liability of Seaman was grounded by this court on the fact that Seaman remained in possession of the premises, and under these circumstances it could not delegate either to Permanent or Worden its duties under the safe-place statute. It appears to us that the liability of Seaman here is precisely the sort that was contemplated under the indemnity contract, and that to hold that it is not is to render the indemnity meaningless. The indemnity contract presupposes a liability by Seaman to employees, frequenters, and others. Defendant suggests several situations in which it asserts that the indemnity can still have meaning even if construed to eliminate liability where the indemnitee negligently contributes to the injuries referred to by it. The first is that it may have been intended to cover liability arising out of nondelegable duties, where in fact the fault was wholly that of Worden, but because of a nondelegable character of the duty Seaman would sustain a liability without actual fault. In such a situation, however, there would be no need for an

indemnity contract because Seaman would be entitled without it to complete indemnity from Worden. *Zulkee v. Wing,* 20 Wis. *408.

The same comment applies to the suggestion that Seaman might sustain a liability for Worden's negligence upon some theory of agency. Here again the indemnity contract would be wholly unnecessary for Worden's protection since it could have indemnity without it. The suggestion that Seaman might become liable for workmen's compensation because of injury to an employee if Worden were an uninsured contractor under sec. 102.06, Stats., is subject to the same infirmity since the statute in that case prescribes that the employer must indemnify the person charged with compensation under the section. We have been able to discover no situation in which the indemnity contract would have any meaning or purpose if it were not to cover such a default by Seaman as is here involved. As we have heretofore suggested, it may be that the contract does not cover cases in which the sole proximate cause of the injuries resulted in Seaman's liability were defaults on the part of Seaman wholly uncontributed to by Worden. A strong argument can be made to the effect that such a case is not covered by the indemnity, but we need not decide this question because it is not here under the facts of this case.

The authorities offer substantial support for our conclusions here, although there is a conflict in the cases. We are cited to no Wisconsin case which is binding upon us. The cases which state what appears to us to be the better rule make a distinction between active and passive negligence. In *Dudar v. Milef Realty Corp.* 258 N. Y. 415, 180 N. E. 102, the court said, speaking of the indemnitee:

"Its own negligence was, at most, passive in failing to take more precautions against such operation. . . .
"Enough that the contractor's obligation plainly covers injuries caused by the contractor's negligence in which the owner did not participate, and where the owner's negligence,

if any, was only passive and in the performance of a duty owed, not to the contractor, but to the injured party."

To the same effect see *John Griffiths & Son Co. v. National Fireproofing Co.* 310 Ill. 331, 141 N. E. 739.

Three cases very nearly in point and taking the same position as we take here are *Baltimore & O. R. Co. v. Youngstown Boiler & Tank Co.* (6th Cir.) 64 Fed. (2d) 638; *Southern Pac. Co. v. Fellows,* 22 Cal. App. (2d) 87, 71 Pac. (2d) 75; *St. Louis & S. R. Co. v. Stewart* (Mo. Sup.), 187 S. W. 836.

The surrounding facts and circumstances are urged by defendant as indicating strongly that the purpose and meaning of the indemnity contract was not that urged by plaintiff. Among these are that the indemnity contract was a form contract printed on all orders by Permanent; that Seaman never requested any indemnity; that it already had an insurance policy from plaintiff protecting it against losses occasioned by its own negligence; and that the consideration was inadequate to justify the assumption that Worden contracted to make itself liable to the extent claimed. This evidence does not change our views as to the meaning of the indemnity. The language of the indemnity contract is quite clear and will not accommodate itself to the meaning contended for by defendant.

It is also suggested that it would be contrary to public policy to extend the clause of this type to include indemnity for violation of the safe-place statute because it would tend to discourage the discharge of Seaman's duties in that respect. It may well be that Seaman could not contract with members of the general public and employees of Worden that it would not be liable for its own failure to maintain a safe place for frequenters and employees. That is not what it did, however. It simply purchased insurance from plaintiff and exacted an indemnity contract from defendant, the latter to cover cases where defendant's default contributed actively to Seaman's

liability. If there were anything to defendant's contention, automobile and public-liability insurance policies would be void.

It is next contended that Worden is not bound by the judgment in the *Criswell Case, supra,* since it was not a party to the case and since there was a defective tender of the defense by Seaman to Worden. The tender is claimed to be defective because it was not specifically grounded upon the indemnity contract. Irrespective of this, defendant claims that its interest in the success of the *Criswell Case* made it impossible or unethical for it to assume the defense. These contentions cannot be sustained. Worden executed the indemnity contract and must be considered to have known why defense of the *Criswell* action was being tendered to it. We see no reason why Worden could not properly have defended the *Criswell* suit on behalf of Seaman and canceled off its share of the recovery as a part payment upon its indemnity contract to Seaman.

It is next contended that plaintiff and defendant are at most coinsurers or cosureties, and that plaintiff's right is to contribution and not to indemnity. Cosuretyship is the relation between two or more sureties who are bound to answer for the same duty of the principal and who as between themselves should share the loss caused by the default of the principal. Restatement, Security, Proposed Final Draft, ch. 6, § 141. The relation of coinsurers is upon about the same basis. The rule of contribution is an equitable rule and is based on the fact that those who insure or become sureties for the same duty ought to share the results of the default. Where, however, by reason of the agreement between the sureties or by reason of the general equities of the situation one surety or insurer ought, as against other sureties or insurers, to bear the whole loss, he becomes the principal surety, and all the other insurers or sureties become subinsurers or

subsureties. Restatement, Security, Proposed Final Draft, ch. 6, § 141A. That is the situation here. Plaintiff merely insured Seaman against its liabilities under the safe-place statute. Worden insured Seaman against all liabilities sustained by it and contributed to by a breach of duty on the part of Worden. As between Worden and plaintiff, waiving all questions whether they were otherwise cosureties or co-insurers, Worden clearly ought to respond in indemnity rather than contribution.

It is next contended that at all events plaintiff may not recover for the costs of the appeal in the *Criswell Case, supra.* We see nothing to this claim in view of the evidence that plaintiff served a demand that appellant either pay the judgment or prosecute an appeal and that appellant declined to do either.

A circumstance not heretofore mentioned gives rise to the final contention by defendant. In the *Criswell Case, supra,* Permanent was interpleaded by Seaman, and Seaman filed a cross complaint for indemnity against Permanent if it be held liable to plaintiff. The lower court dismissed the cross complaint against Permanent and this determination was affirmed upon appeal. Liability of Permanent was asserted because as general contractor it had acquired control and custody of the portion of the premises involved in the new construction, and because in effect Permanent became owner of the place of employment under the safe-place statute. This contention was rejected because it did not appear that Permanent in fact had the custody and control of Criswell's place of employment or supervision of his work at the time Worden's crew was erecting the structural steel. There is no showing in this case that the interpleading of Permanent and the attempt to fix liability on Permanent was either the result of bad faith or bad judgment on the part of Seaman. Had Seaman not interpleaded all the persons whom it might reasonably contend should sustain a liability instead of it, quite as good an argu-

ment could be made by defendant that it had conducted the defense in bad faith or in a grossly negligent manner.

· *By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 12, 1941.